IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MICHAEL A. BETHEL,           )<br>                              )<br>            Petitioner,   )<br>                              )<br>v.                            )<br>                              )<br>KAREN ROHLING, et al.,        )<br>                              )<br>            Respondents.  )<br>_____) | **CIVIL ACTION**<br><br>No. 04-3411 |

**MEMORANDUM AND ORDER**

**I.    INTRODUCTION**

This case comes before the court on petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) The matter has been fully briefed and is ripe for decision.[1] (Docs. 12, 20.) The application is DENIED for reasons set forth herein.

Petitioner was convicted of one count of capital murder and two counts of premeditated first-degree murder and sentenced to prison for 100 years. The facts were stipulated to by the parties and tried to the court in return for the state's agreement not to pursue the death penalty.  The stipulated facts were as follows:

> 1. On February 7, 2000, shortly after 10:00 a.m., law enforcement officers were dispatched to a residence at 700 N. Summit Street in Girard, Crawford County, Kansas in response to a 911 ... call made from that address.
>
> 2. Upon entering the residence at 700 N. Summit, police officers discovered three victims suffering from what they perceived to be gunshot wounds. The two females Sherrill Davis and Waneta Boatright were pronounced dead at the scene. John A. Bethel (Defendant's father) was taken to Girard District Hospital where he was also pronounced dead.

---

[1] Respondents have conceded exhaustion. 28 U.S.C. § 2254(b)(3) (Doc. 20 at 2).

The autopsy on the three bodies showed that each died of gunshot wounds.

3. Law enforcement officers observed Michael Bethel, the defendant, in the kitchen of the residence. When officers made contact with the defendant, they observed the defendant 'attempt to reach for [a] handgun on the table.' The defendant was in a position where he could reach the handgun. A law enforcement officer was in a position where he could have been shot by the defendant and was afraid for his life. The only other person in the house was the defendant's grandmother who was confined to bed.

4. Mr. Bethel was taken into custody and transported to the Crawford County Sheriff's Office where he was subsequently interviewed by Bruce L. Adams, Senior Special Agent from the Kansas Bureau of Investigation, and Stu Hite, a Crawford County Sheriff's Detective. The defendant was Mirandized and agreed to talk to the officers. It is undisputed that this was a custodial interrogation.

5. Hite and Adams conducted a second interview which was recorded on video with accompanying sound. After having been read his rights pursuant to Miranda and indicating that he understood them, defendant agreed to talk to the officers. Hite and Adams would testify that the content of the first unrecorded confession was virtually identical to the interrogation captured on video.

6. Hite and Adams would testify that defendant admitted shooting Sherrill Davis in the head while she was talking on the telephone. The defendant's father, John 'Andy' Bethel came out of the bathroom and the defendant shot him with the same hand gun. While unsure how many times he shot his father, the defendant believed it was more than once. About half an hour later 'he became aware that a nurse, Waneta Boatwright, was in the residence.... She was facing west, looking out the window. The defendant stated that he approached her from behind, and shot her while she was facing away from him, with her back toward him.

7. When asked why he killed his father, Ms. Davis and Ms. Boatright, the defendant explained that 'God told me to do it.' Hite and Adams would testify that the defendant told them that he had thought about killing his father, as well as unspecified others, on many occasions. He also indicated that Davis and his father were 'bad' people who contributed to him having a 'rough twenty-three years of [his] life.'

8. The defendant agrees that he intended to kill Sherrill Davis, John Andrew Bethel and Waneta Boatright, and that he premeditated the murders.

> 9. The defense further proffers the report of Dr. Mark Cunningham, in which Dr. Cunningham opines that Mr. Bethel's mental state precluded him from understanding the difference between right and wrong or from understanding the consequences of his actions. This report is proffered for appellate purposes only, as Mr. Bethel and his defense counsel understand that this Court's prior rulings would render Dr. Cunningham's opinion inadmissible at trial. The parties agree that Dr. Cunningham's opinion does not constitute a defense to the charged crimes under the current version of K.S.A. 22-3220.

State v. Bethel, 275 Kan. 456, 458-59, 66 P.3d 840, 842-43 (2003).

Petitioner asserted on appeal that the legislature's abolition of the insanity defense and failure to require a moral blameworthiness component in the determination of *mens rea* violates due process. See id. The Bethel court concluded that due process does not require the legislature to adopt any particular insanity test nor *mens rea* to include a wrongfulness component.

This court's ability to consider collateral attacks on state criminal proceedings is circumscribed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under the highly deferential standard set forth in AEDPA, if petitioner's claim has been decided on the merits in a state court, a federal habeas court may only grant relief if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

> A state-court decision is contrary to established federal law under § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state-court decision

> is an unreasonable application of federal law under § 2254(d)(1) "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413, 120 S.Ct. 1495. What is "reasonable" is determined under an objective test rather than by, say, determining whether a judge somewhere has so ruled. <u>See id.</u> at 409-10, 120 S.Ct. 1495.

<u>Bush v. Neet</u>, 400 F.3d 849, 851-52 (10th Cir. 2005). An inherent limitation to review under § 2254 is that a habeas court will only consider alleged violations of <u>federal</u> law. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80 (1991). Moreover, the court will not normally consider federal questions unless they have first been presented to the state courts. <u>Picard v. Connor</u>, 404 U.S. 270, 277-78, 92 S. Ct. 509, 513 (1971); <u>but see</u> 28 U.S.C. § 2254(b)(2) (permitting <u>denial</u> on the merits, despite failure to exhaust state remedies).

## II. ANALYSIS

Petitioner makes essentially two different arguments in his habeas petition. First, petitioner asserts that Kansas' elimination of the M'Naughten test for insanity and enactment of K.S.A. 22-3220 precluded him from asserting an insanity defense. Second, that the application of K.S.A. 22-3220 abrogates an essential element of mens rea. The court will address these arguments in turn.

Prior to January 1, 1996, Kansas law allowed a defendant to present an insanity defense by applying the M'Naughten test. Under that test, a defendant would not be held criminally responsible for his acts "(1) where the defendant does not know the nature and quality of the act, or, in the alternative, (2) where the defendant does not

-4-

know right from wrong with respect to that act." State v. Cellier, 263 Kan. 54, 71, 948 P.2d 616, 626 (1997). The legislature, however, changed the law in 1996. The statute pertaining to mental disease or defect currently is as follows:

> It is a defense to a prosecution under any statute that the defendant, as a result of mental disease or defect, lacked the mental state required as an element of the offense charged. Mental disease or defect is not otherwise a defense. The provisions of this section shall be in force and take effect on and after January 1, 1996.

K.S.A. 22-3220.

The Kansas Supreme Court agreed with other states that had abolished the insanity defense and concluded that there was no constitutional right to an insanity defense. Bethel, 275 Kan. at 466.[2] This court is not required to determine whether or not the Constitution requires an insanity test. This court must uphold the Kansas Supreme Court unless its decision was contrary to established law. Accordingly, this court must determine whether the United States Supreme Court has held that the Constitution requires the states to provide an insanity defense. It has not. In Medina v. California, 505 U.S. 437, 449, 112 S. Ct. 2572, 2579 (1992), the court stated "we

---

[2] Petitioner is represented by counsel. The briefs filed by both petitioner's and respondents' counsel are thorough and well-written. The court does disagree, however, with petitioner's characterization of the Kansas Supreme Court's opinion as ". . . with the sweep of a pen and a few pages of finely parsing Supreme Court language and history, Kansas concluded that whether a person understands the difference between right and wrong or has the mental capability to understand the nature or wrongfulness of his or her conduct is irrelevant." (Doc. 12 at 22). The Supreme Court's analysis was well-reasoned and well-supported. Kansas' decision to abolish the insanity defense was not only legally correct; it was and is in the best interests of society to restrict a mental defense to one which negates an essential element of the charged offense such as specific intent. See, e.g. United States v. Brown, 326 F.3d 1143 (10th Cir. 2003).

-5-

have not said that the Constitution requires the States to recognize the insanity defense." Petitioner has not identified any authority that would contradict the court's statement in 1992. Therefore, the Kansas legislature's decision to modify, or entirely eliminate the insanity defense, is not contrary to federal law.

Petitioner next asserts that the modification of the insanity defense violates his rights since it has negated an essential component of mens rea. Petitioner argues that mens rea not only requires intent, but also requires that the government prove that a defendant has moral blameworthiness. Petitioner recites the history of mens rea in order to conclude that the moral blameworthiness component of mens rea is a fundamental principle of law. While some may find the history of mens rea interesting, the court's role in a habeas petition is only to determine whether the state court's decision is contrary to clearly established federal law. In arguing that the duality of mens rea is clearly established, petitioner cites to Morissette v. United States, 342 U.S. 246, 72 S. Ct. 240 (1952).

Petitioner concludes that the Morissette court held that mens rea required an evil intent or moral blameworthiness. (Doc. 12 at 30). Petitioner is incorrect. Petitioner's citation to Morisette correctly identifies the passage in which the court is discussing that common-law required some sort of vicious will. See Morissette, 342 U.S. at 251. However, the court did not hold that mens rea required a finding of evil intent, but rather was simply explaining the history of mens rea. The court also stated that Congress "has at times required a specific intent or purpose which will require some specialized knowledge or design for some evil beyond the common-law intent to do

-6-

injury." Id. at 264-265.  However, the court did not state that a finding of an evil mind was a constitutional requirement.

Moreover, sixteen years later, the court expressed that it had "never articulated a general constitutional doctrine of mens rea." Powell v. State of Tex., 392 U.S. 514, 535, 88 S. Ct. 2145, 2156 (1968).  The court went on to state that the doctrines of mens rea and insanity, along with other doctrines, have constantly shifted and adjusted based on the evolving aims of the criminal law and changing views of man.  Id. at 536.  The court observed that due to this changing nature, the states were required to adjust the doctrines accordingly.  Id.  Contrary to petitioner's assertions, Powell actually supports the state's province to modify the definitions of mens rea and the insanity defense.

Since petitioner has not identified any clearly established federal law that is contrary to the state's decision, this court must deny his application.

### III.  CONCLUSION

For the foregoing reasons, petitioner's application for a writ of habeas corpus is DENIED.  A motion for reconsideration is neither invited nor encouraged.  Any such motion shall not exceed three double-spaced pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp, 810 F. Supp. 1172, 1174 (D. Kan. 1992).  No reply shall be filed.  Identical requirements and restrictions shall apply to any application for certificate of appealability or any other submission, however styled, directed to this Memorandum and Order.

IT IS SO ORDERED.

Dated this   22nd   day of February 2006, at Wichita, Kansas.

                                        s/ Monti Belot
                                        Monti L. Belot
                                        UNITED STATES DISTRICT JUDGE